# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MUHAMMED SAEED, | ) |
| Plaintiff, | ) |
| | ) No.1:16-CV-11715-ADB |
| v. | ) |
| | ) Oral Argument Requested |
| OMEX SYSTEMS, INC. f/k/a OMEX SYSTEMS, LLC; | ) |
| WALLACHBETH SOFTWARE LLC, MICHAEL | ) |
| WALLACH, DAVID BETH, and WALLACHBETH | ) |
| CAPITAL, LLC, | ) |
| Defendants. | ) |
| | ) |

### DEFENDANTS WALLACHBETH SOFTWARE LLC, MICHAEL WALLACH, DAVID BETH, AND WALLACHBETH CAPITAL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

Manion Gaynor & Manning LLP
125 High Street
Boston, MA 02110
(617) 670-8800

O'Hare Parnagian LLP
82 Wall Street, Suite 300
New York, NY 10005-3686
(212) 425-1401

*Attorneys for Defendants WallachBeth Software LLC, Michael Wallach, David Beth, and WallachBeth Capital, LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...............................................................................iii

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS .................................................................................2

    A.    The Parties ...........................................................................................2

        1.    Saeed ...............................................................................2

        2.    OMEX ..............................................................................2

        3.    The WB Defendants...........................................................3

    B.    The Allegations of the Complaint.........................................................4

    C.    The Operating Agreement.....................................................................5

        1.    Limitation of Members' and Managers' Liability .................5

        2.    Provisions Governing the Withdrawal or Removal of Members................6

ARGUMENT ...................................................................................................7

I.    THIS COURT LACKS PERSONAL JURISDICTION
OVER ANY OF THE WB DEFENDANTS ................................................7

    A.    There Is No General Jurisdiction over the WB Defendants ...................8

    B.    There Is No Specific Jurisdiction Over the WB Defendants .................9

II.    THE COMPLAINT DOES NOT STATE A
CLAIM FOR BREACH OF CONTRACT ...............................................11

    A.    Under the Terms of the Operating Agreement,
Saeed is Not Entitled to the Damages He Seeks...................................11

    B.    The WB Defendants Are Not Individually Liable for
OMEX LLC's Alleged Contractual Obligations to Saeed....................12

    C.    Saeed's Breach of Contract Claim is Time-Barred...............................14

III.    THE COMPLAINT DOES NOT STATE A
CLAIM FOR BREACH OF FIDUCIARY DUTY.........................................15

A.     The Breach of Fiduciary Duty Claim Should Be
Dismissed as Duplicative of the Breach of Contract Claim ................................16

B.     The Breach of Fiduciary Duty Claim Is Time-Barred ..........................................17

III.    THE COMPLAINT DOES NOT STATE A
CLAIM FOR UNJUST ENRICHMENT...........................................................................17

A.     The Unjust Enrichment Claims Is Duplicative of the Breach of Contract
Claim, Even for Parties that Did Not Sign the Operating Agreement ..................17

B.     The Unjust Enrichment Allegations Against WBC
Are Too Conclusory to Survive a Motion to Dismiss..........................................18

CONCLUSION...................................................................................................................20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

AM Gen. Holdings LLC on behalf of Ilshar Capital LLC v. Renco Grp., Inc.,
        No. CV 7639-VCN, 2013 WL 5863010 (Del. Ch. Oct. 31, 2013) ....................................18

Ashcroft v. Iqbal,
        556 U.S. 662 (2009).........................................................................................11, 19

Bell Atlantic Corp. v. Twombly,
        550 U.S. 544 (2007).........................................................................................11, 20

Berner v. Delahanty,
        129 F.3d 20 (1st Cir. 1997)...................................................................................11

Boit v. Gar-Tec Prods., Inc.,
        967 F.2d 671 (1st Cir. 1992)...................................................................................7

 Boulden v. Albiorix, Inc.,
        No. CIV.A. 7051-VCN, 2013 WL 396254 (Del. Ch. Jan. 31, 2013),
        as revised (Feb. 7, 2013) .....................................................................................16

Commonwealth Land Title Ins. Co. v. Funk,
        No. CV N14C-04-199 PRW, 2014 WL 8623183 (Del. Super. Ct. Dec. 22, 2014)...........15

Copia Commc'ns, LLC v. AMResorts, L.P.,
        812 F.3d 1 (1st Cir. 2016)....................................................................................8, 9

Daimler AG v. Bauman,
        134 S. Ct. 746 (2014)...........................................................................................10

Doberstein v. G-P Indus., Inc.,
        No. CV 9995-VCP, 2015 WL 6606484 (Del. Ch. Oct. 30, 2015)............................. 17-18

Freid v. Gordon,
        No. CIV.A. 09-10928-DJC, 2011 WL 1157891 (D. Mass. Mar. 25, 2011) ............... 15-16

Gale v. Bershad,
        No. CIV. A. 15714, 1998 WL 118022 (Del. Ch. Mar. 4, 1998).................................. 16-17

Goodyear Dunlop Tires Operations, S.A. v. Brown,
        564 U.S. 915 (2011)........................................................................................8, 9, 10

Graulich v. Dell Inc.,
        No. CIVA5846-CC, 2011 WL 1843813 (Del. Ch. May 16, 2011)...................................17

In re Nortel Networks Inc.,
   No. 09-10138(KG), 2013 WL 6500224 (Bankr. D. Del. Dec. 10, 2013) .........................19

In re Parametric Tech. Corp.,
   300 F. Supp. 2d 206 (D. Mass. 2001) ...............................................................................11

InterGen N.V. v. Grina,
   344 F.3d 134 (1st Cir. 2003)..............................................................................................19

Kagan v. HMC-New York, Inc.,
   939 N.Y.S.2d 384 (N.Y. App. Div. 2012) ........................................................................14

Kurra v. Synergy Computer Solutions, Inc.,
   No. 15-cv-13952-ADB, 2016 WL 5109132 (D. Mass. Sept. 9, 2016) ..........................2, 11

Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,
   142 F.3d 26 (1st Cir. 1998)...................................................................................................7

MetCap Sec. LLC v. Pearl Senior Care, Inc.,
   No. CIV.A. 2129-VCN, 2007 WL 1498989 (Del. Ch. May 16, 2007) ............................19

MicroStrategy Inc. v. Acacia Research Corp.,
   No. CIV.A. 5735-VCP, 2010 WL 5550455 (Del. Ch. Dec. 30, 2010) .............................20

Mulder v. Kohl's Dep't Stores, Inc.,
   No. 15-11377-FDS, 2016 WL 393215 (D. Mass. Feb. 1, 2016) .......................................19

Newman v. European Aeronautic Def. & Space Co. Eads N.V.,
   700 F. Supp. 2d 156 (D. Mass. 2010) ................................................................................10

Nolu Plastics, Inc. v. Ledingham,
   No. 20445-NC, 2005 WL 5654418 (Del. Ch. Dec. 17, 2005)....................................14, 20

Omni-Wave Elecs. Corp. v. Marshall Indus.,
   127 F.R.D. 644 (D. Mass. 1989)................................................................................... 19-20

Phillips v. Prairie Eye Ctr.,
   530 F.3d 22 (1st Cir. 2008)............................................................................................7, 10

Platten v. HG Bermuda Exempted Ltd.,
   437 F.3d 118 (1st Cir. 2006)............................................................................................ 7-8

Pulieri v. Boardwalk Properties, LLC,
   No. CV 9886-CB, 2015 WL 691449 (Del. Ch. Feb. 18, 2015) .......................................15

Riccio v. Ford Motor Credit Co.,
   238 F.R.D. 44, 47 (D. Mass. 2006)....................................................................................12

Shandler v. DLJ Merch. Banking, Inc.,
        No. CIV.A. 4797-VCS, 2010 WL 2929654 (Del. Ch. July 26, 2010)..............................20

Shaulis v. Nordstrom Inc.,
        120 F. Supp. 3d 40, 55-56 (D. Mass. 2015).......................................................................19

Solow v. Aspect Res., LLC,
        No. CIV.A. 20397, 2004 WL 2694916 (Del. Ch. Oct. 19, 2004).....................................16

Sportschannel New England Ltd. P'ship v. Fancaster, Inc.,
        No. 09-cv-11884-NG, 2010 WL 3895177 (D. Mass. Oct. 1, 2010) ...................................2

United States v. Swiss Am. Bank, Ltd.,
        274 F.3d 610 (1st Cir. 2001)..............................................................................................10

Veloric v. J.G. Wentworth, Inc.,
        No. CIV.A. 9051-CB, 2014 WL 4639217 (Del. Ch. Sept. 18, 2014)................................18

Whittington v. Dragon Group, L.L.C.,
        991 A.2d 1 (Del. 2009) ................................................................................................14, 15

### Statutes and Rules

Del. Code Ann. tit. 6, § 18-303...................................................................................................13

Del. Code Ann. tit. 6, § 18-1101.................................................................................................13

Del. Code Ann. tit. 10 § 8106.........................................................................................14, 17, 20

Fed. R. Civ. P. 12.............................................................................................................1, 10, 11

Defendants WallachBeth Software LLC ("WBS"), Michael Wallach ("Wallach"), David Beth ("Beth"), and WallachBeth Capital, LLC ("WBC") (collectively, the "WB Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint ("Compl.") pursuant to Fed. R. Civ. P. 12(b)(2) and (6).

## PRELIMINARY STATEMENT

In this action, plaintiff Muhammed Saeed ("Saeed") attempts to reap a windfall from a transaction that occurred almost four years after he was removed for cause as a Class B Member of OMEX Systems, LLC ("OMEX LLC"). Specifically, Saeed claims that under OMEX LLC's limited liability operating agreement ("Operating Agreement" or "OA"), he is entitled to a portion of the proceeds of the sale of OMEX Systems, Inc. ("OMEX Inc.") in 2015, even though he was removed as a member of OMEX LLC in 2011. OMEX LLC was converted to OMEX Inc. prior to the 2015 sale.

As a threshold matter, this Court lacks personal jurisdiction over the WB Defendants, who have either no contacts or *de minimis* contacts with Massachusetts, none of which are related to the claims in this action. Based on well-established Supreme Court and First Circuit precedent, the assertion of jurisdiction over the WB Defendants under these circumstances would not comport with the requirements of due process.

Saeed has also failed to state a claim against the WB Defendants. As to his breach of contract claim, the terms of the Operating Agreement itself, which this Court may consider on a motion to dismiss, flatly contradict his allegations that he is somehow entitled to a portion of the consideration for the sale of OMEX, Inc. To the contrary, the Operating Agreement unambiguously provides that a Class B Member is entitled to no compensation after being removed for cause. Furthermore, under Delaware law, which governs the Operating Agreement, Saeed cannot hold the managers of OMEX LLC personally liable for the debts of the company,

which is what he attempts to do in his breach of contract action.  Finally, Saeed's breach of

contract claim is time-barred under Delaware's three-year statute of limitations because it was

brought almost five years after Saeed alleges that he was wrongfully removed from OMEX LLC.

Saeed's other claims fare no better.  His breach of fiduciary duty claim is essentially

identical to his breach of contract claim and should therefore be dismissed as duplicative.  It is

also time-barred under the applicable three-year statute of limitations.

The unjust enrichment claim is similarly duplicative of the breach of contract claim.

Moreover, Saeed's attempt to shoehorn WBC into the claim with a conclusory allegation that it

is the alter ego of WBS is insufficient under longstanding law as well as under the Supreme

Court's directives in Iqbal and Twombly.

Accordingly, the Complaint should be dismissed in its entirety as to the WB Defendants.

## STATEMENT OF FACTS[1]

### A.  The Parties

#### 1.  Plaintiff

Saeed alleges that he is a resident of Suffolk County, Massachusetts.  Compl. ¶¶ 1, 7, 12.

#### 2.  OMEX

The Complaint alleges that defendant OMEX Inc. is a Delaware corporation with a

registered agent in Delaware and, "at all times material," a principal place of business in New

---

[1] "On a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pleaded facts as true, draw all reasonable inferences in favor of the plaintiff, and may not consider evidence outside the pleadings, with the exception of documents referenced in the complaint and central to plaintiff's claim and documents whose authenticity is not disputed."  Kurra v. Synergy Computer Solutions, Inc., No. 15-cv-13952-ADB, 2016 WL 5109132, at *6 n.6 (D. Mass. Sept. 9, 2016).  In addition, on a motion to dismiss for lack of personal jurisdiction, the Court may consider facts outside of the complaint.  See, e.g., Sportschannel New England Ltd. P'ship v. Fancaster, Inc., No. 09-cv-11884-NG, 2010 WL 3895177, at *1 n.1 (D. Mass. Oct. 1, 2010).  Relevant jurisdictional facts are set forth in the accompanying declarations of Michael Wallach ("Wallach Decl.") and David Beth ("Beth Decl.").

York.  Id. ¶ 2, 8, 12.  It also alleges that "in early 2015, Omex [Inc.] was purchased by Raptor Trading Systems, Inc."  Id. ¶ 31.

The key allegations of the Complaint concern the time period when OMEX Inc. was still a Delaware limited liability company, OMEX LLC, governed by the Operating Agreement, which forms the basis for Saeed's claims and is referenced throughout the Complaint.  See id. ¶¶ 16, 17, 19, 20, 24, 25, 28, 29, 37, 39, 41.  A true and correct copy of the Operating Agreement is annexed as Exhibit A to the Declaration of Michael Wallach.

Prior to Saeed's removal from the company, the managers of OMEX were Saeed and "through WallachBeth Software, Wallach and Beth, individually."  Id. ¶ 14.  WBS was the Class A Member of OMEX LLC, and Saeed was the Class B Member.  Id. ¶ 20.

### 3.  The WB Defendants

The Complaint alleges that Wallach and Beth are residents of New York.  Id. ¶¶ 4, 5, 10, 11.  They are actually both residents of New Jersey.  Wallach Decl. ¶ 27; Beth Decl. ¶ 4.

Saeed alleges that WBS "is a New York limited liability company located in Nassau County, New York," with, "at all times material . . . a primary place of business in the State of New York."  Id. ¶¶ 3, 9.  WBS's sole function was to serve as the Class A Member of OMEX LLC.  It conducted no other business, in Massachusetts or elsewhere.  Wallach Decl. ¶ 6.  WBS has never been qualified or authorized to do business in Massachusetts.  Id. ¶ 7.

Saeed alleges that WBC is a New York limited liability company with "a principal address" in New York, New York and with, "at all times material . . . a primary place of business in the State of New York."  Id. ¶¶ 6, 9.

Other than WBC's unrelated business with a small number of institutional brokerage clients in Massachusetts, see infra at 9 n.5, the WB Defendants never transacted or solicited

business in Massachusetts and have never contracted to provide services or things in Massachusetts.  Wallach Decl. ¶¶ 8, 9, 19, 20, 29, 30; Beth Decl. ¶¶ 7, 8.  None of the WB Defendants have ever owned or leased real property in Massachusetts; maintained any bank accounts in Massachusetts; filed tax returns in Massachusetts; maintained an office, place of business, postal address or telephone listing in Massachusetts; invoked Massachusetts judicial process by commencing a lawsuit in Massachusetts, or otherwise consented to the jurisdiction of any court in Massachusetts; or engaged in any persistent course of conduct in Massachusetts. Wallach Decl. ¶¶ 10-15, 21-26, 31-36; Beth Decl. ¶¶ 9-14.

**B.**     **The Allegations of the Complaint**

Saeed's claims arise from what he alleges to be his improper removal as a Class B Member of OMEX LLC in early 2011.  Compl. ¶¶ 22-30.

Exhibit A to the Operating Agreement provides that the Class B Member is entitled to a 20% "gain on sale" allocation.  Compl. ¶ 21; see OA at 58.[2]  Based on this provision of the Operating Agreement, Saeed asserts that he was entitled to receive a portion of the consideration for the sale of OMEX Inc. to Raptor in 2015, even though Saeed had been removed as a member of OMEX LLC approximately four years earlier.  Compl. ¶¶ 34, 40, 45, 49.

Based on his claim that he was entitled under the Operating Agreement to a portion of the consideration for the sale of OMEX Inc., Saeed asserts claims for (1) breach of contract against OMEX Inc., WBS, Wallach, and Beth; (2) breach of fiduciary duty against WBS, Wallach, and Beth; and (3) unjust enrichment against WBS, Wallach, Beth, and WBC.  With regard to the breach of contract claim, Saeed alleges that "Omex agreed to pay out Share of Net Profits and

---

[2] "Gain on sale" is not defined in the Operating Agreement.

Losses and Gains on Sale to the Members," id. ¶ 38, and that "Omex by and through its

Managers WallachBeth Software, Wallach and Beth" refused to do so.  Id. ¶ 40.

**C.**      **The Operating Agreement**

     The Operating Agreement provides that "[t]his Operating Agreement, and the application

or interpretation hereof, shall be governed exclusively by its terms and by the laws of the State of

Delaware, and specifically the Delaware [Limited Liability Company] Act."  OA § 13.4.

     **1.**      **Limitation of Members' and Managers' Liability**

     Section 6.1 of the Operating Agreement provides that "[e]ach Member's liability shall be

limited as set forth in this Operating Agreement, the Delaware [Limited Liability Company] Act,

and other applicable law."  Section 6.2 provides that "[a] Member will not be personally liable

for any debts or losses of the Company beyond the Member's respective Capital Contributions,

except as provided in Section 6.6 hereof, as otherwise required by law or as agreed to in advance

by a Member or Members in writing." [3]

     Pursuant to the Operating Agreement, OMEX LLC's managers are not liable for any loss

or damage suffered by any of the members unless the managers engaged in certain limited

categories of misconduct:

> 5.5      Liability for Certain Acts. The Managers shall perform their managerial
> duties in good faith, in a manner they reasonably believe to be in the best interests
> of the Company, and with such care as an ordinarily prudent person in a like
> position would use under similar circumstances. A Manager who so performs the
> duties of Manager shall not have any liability by reason of being or having been a
> Manager of the Company.  Managers do not, in any way, guarantee the return of
> the Members' Capital Contributions or a profit for the Members from the
> operations of the Company.  <u>Managers shall not be liable to the Company or to
> any Member for any loss or damage sustained by the Company or any Member,
> unless the loss or damage shall have been the result of fraud, deceit, gross
> negligence, willful misconduct, or a wrongful taking by the Managers.</u>

---

[3] Section 6.6 of the Operating Agreement concerns members' liability to the company itself, not to other members, and is therefore inapplicable to Saeed's claims.

OA ¶ 5.5 (emphasis added).

### 2.        Provisions Governing the Withdrawal or Removal of Members

Section 11.3(a)(1) of the Operating Agreement provides that "[a]ny Member, other than a Class A Member . . . may be required by Class A Members to withdraw from the Company for any reason."

Section 11.5 of the Operating Agreement sets forth the "criteria for calculating the values of Membership or Economic Interests" if a member withdraws or is required to withdraw. Specifically, it provides that "[w]ithdrawal of a Member, whether in whole or in part, shall be at Book Value." Id. § 11.5(b). "Book Value" means "the value of a Member's Capital Account" in OMEX LLC. Id. § 1.1(b). Exhibit A to the Operating Agreement lists Saeed's initial capital contribution as $0. See OA at 58.

Saeed was removed from the company pursuant to Section 11.6 of the Operating Agreement, titled "Involuntary Withdrawal." Compl. ¶¶ 24, 29. Sections 11.6(a) provides for the removal of members other than Class A or Class B Members with or without cause, Section 11.6(b) provides for removal of Class A Members for cause, and Section 11.6(c) provides for the removal of Class B Members (i.e., Saeed) for cause.

Section 11.6(e) provides that "removal pursuant to 11.6(a) or (b) above shall be deemed a withdrawal pursuant to this Article 11." In other words, if a member other than a Class A or Class B Member is removed pursuant to Section 11.6(a) or a Class A Member is removed pursuant to Section 11.6(b), then the removal is treated as a withdrawal and the member is entitled to the "values of Membership or Economic Interests" – Book Value – pursuant to Section 11.5.

However, removal of a Class B Member for cause pursuant to Section 11.6(c), is not treated as a withdrawal.  <u>See</u> OA § 11.6(e).  The Operating Agreement does not provide for any compensation to a Class B Member removed for cause.

## ARGUMENT

## I.   THIS COURT LACKS PERSONAL JURISDICTION <u>OVER ANY OF THE WB DEFENDANTS</u>

As the plaintiff, Saeed bears the burden of proving that this Court has personal jurisdiction over the WB Defendants.  <u>See</u> <u>Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n</u>, 142 F.3d 26, 34 (1st Cir. 1998).  To do so, he may not rely upon unsupported allegations, but "must go beyond the pleadings" and make a prima facie showing based on specific evidence and "affirmative proof."  <u>Boit v. Gar-Tec Prods., Inc.</u>, 967 F.2d 671, 675 (1st Cir. 1992); <u>see also</u>, <u>e.g.</u>, <u>Phillips v. Prairie Eye Ctr.</u>, 530 F.3d 22, 26 (1st Cir. 2008) ("In order to make a prima facie showing of jurisdiction, the plaintiff ordinarily cannot rest upon the pleadings but is obliged to adduce evidence of specific facts.") (internal quotation marks omitted).

Here, Saeed does not even attempt to meet his burden, and the Complaint contains no allegations whatsoever supporting the assertion of personal jurisdiction over the WB Defendants. The only allegation in the Complaint concerning Massachusetts is that Saeed resides there. Compl. ¶¶ 1, 7, 12.

Nor can Saeed meet his burden.  "To establish personal jurisdiction, plaintiffs must show that jurisdiction is both statutorily authorized and consistent with the Constitution."  <u>Platten v. HG Bermuda Exempted Ltd.</u>, 437 F.3d 118, 135 (1st Cir. 2006).  Because, however, "[t]he Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as

coextensive with the outer limits of the Constitution . . . the only inquiry that remains is the constitutional one." Id.[4]

To satisfy the Due Process Clause, "a court may exercise general or specific jurisdiction over an out-of-state defendant only if that defendant has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.''" Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The analysis examines whether the forum has either "general or all-purpose jurisdiction, [or] and specific or case-linked jurisdiction." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). Here, this Court has neither general nor specific jurisdiction over the WB Defendants.

### A.       There Is No General Jurisdiction over the WB Defendants

General jurisdiction allows a court to hear "any and all claims against [defendants] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Id. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." Id. at 924.

Here, the allegations of the Complaint affirmatively demonstrate that none of the WB Defendants are at "home" in Massachusetts. To the contrary, it alleges that both WBC and WBS are New York limited liability companies with their principal places of business in New York, and that both Wallach and Beth are New York residents (New Jersey, in reality).

---

[4] Although the First Circuit has "[r]ecently . . . suggested that Massachusetts's long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution," Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016), any such distinction has not been elaborated on, and it is unnecessary for the Court to consider it since the assertion of jurisdiction over the WB Defendants does not withstand constitutional scrutiny.

**B.**   **There Is No Specific Jurisdiction Over the WB Defendants**

"Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.  In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  Goodyear, 564 U.S. at 919 (citations, brackets, and internal quotation marks omitted).

Here, the only limited contacts between any of the WB Defendants and Massachusetts involve WBC's unrelated broker-dealer business.[5]  These contacts do not satisfy the First Circuit's three-prong test for specific jurisdiction, which requires that (a) "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities"; (b) the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable"; and (c) "the exercise of jurisdiction must . . . be reasonable."  Copia Commc'ns, 812 F.3d at 4 (quoting Phillips, 530 F.3d at 27) (ellipses in original).

Indeed, because WBC's, Wallach's, and Beth's limited contacts with Massachusetts all related to WBC's broker-dealer business, and not to OMEX LLC, Saeed, or the allegations of the Complaint, the inquiry can stop at the relatedness prong, which requires that "the evidence

---

[5] For compliance purposes, WBC is registered as a broker-dealer in Massachusetts, as it is in many other states. Wallach Decl. ¶ 17.  WBC has a small number of institutional brokerage clients in Massachusetts, which have accounted for less than 3% of WBC's business from 2011 to the present.  Id.  WBC's work with its institutional brokerage clients in Massachusetts is not related in any way with OMEX LLC, Saeed, or any of the events alleged in the Complaint.  Id. ¶ 18; Beth Decl. ¶ 6.  Wallach and Beth are not directly involved with WBC's Massachusetts clients.  Wallach Decl. ¶ 29; Beth Decl. ¶ 7.  While Wallach and Beth are registered in Massachusetts, and in several other states, as agents of WBC, this registration is necessary from a compliance standpoint should Wallach or Beth ever wish to engage in securities-related business in Massachusetts.  Wallach Decl. ¶ 28; Beth Decl. ¶ 5.

produced to support specific jurisdiction must show that the cause of action either arises directly out of, or is related to, the defendant's forum-based contacts." Phillips, 530 F.3d at 27; see also Daimler AG v. Bauman, 134 S. Ct. 746, 757 (2014) (a corporation's 'continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'") (quoting Int'l Shoe, 326 U.S. at 318 (1945)); Goodyear, 564 U.S. at 931 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.").

Furthermore, although it is not necessary to examine it based on the lack of relatedness, Saeed also cannot meet the "purposeful availment" prong, which "is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 623-24 (1st Cir. 2001). As set forth above and in Wallach's and Beth's declarations, the WB Defendants have directed no activities towards Massachusetts other than those involving a small number of institutional brokerage clients. They have therefore done nothing that could cause them to expect to be subject to jurisdiction in Massachusetts with regard to Saeed's claims.

Finally, Saeed's "failure to demonstrate the necessary minimum contacts eliminates the need even to reach the issue of reasonableness." Newman v. European Aeronautic Def. & Space Co. Eads N.V., 700 F. Supp. 2d 156, 164 (D. Mass. 2010).

Accordingly, as a threshold matter, the Complaint should be dismissed as against the WB Defendants pursuant to Fed. R. Civ. P. 12(b)(2).

## II.     THE COMPLAINT DOES NOT STATE A
## CLAIM FOR BREACH OF CONTRACT[6]

### A.     Under the Terms of the Operating Agreement,
### Saeed is Not Entitled to the Damages He Seeks

Saeed's breach of contract claim must be dismissed because the express terms of the

Operating Agreement contradict his assertion that he is entitled to compensation upon his

removal as the Class B Member of OMEX LLC (let alone a portion of the consideration for a

sale of the company almost four years later).  See Kurra v. Synergy Computer Solutions, Inc.,

No. 15-cv-13952-ADB, 2016 WL 5109132, at *6 n.6 (D. Mass. Sept. 9, 2016) ("documents

referenced in the complaint and central to plaintiff's claim" may be considered on a motion to

dismiss); In re Parametric Tech. Corp., 300 F. Supp. 2d 206, 213 n.7 (D. Mass. 2001) ("Since the

amended complaint refers to the document, it is appropriate on a motion to dismiss for the Court

to consider any part of it, even parts not relied on by the plaintiffs.").

Here, the express terms of the Operating Agreement contradict Saeed's allegation that he

is entitled to a portion of the consideration for the sale of OMEX Inc. to Raptor.

Saeed was removed as the Class B Member pursuant to Section 11.6 of the Operating

Agreement.  Compl. ¶¶ 24, 29.

As the Complaint correctly alleges, a removal pursuant to Section 11.6(a) or (b), which

concern members other than Class B Members, is "deemed a withdrawal pursuant to . . . Article

11."  Compl. ¶ 26; OA § 11.6(e).  Under the terms of Article 11, a withdrawing member is

entitled to receive the "values of Membership or Economic Interests," which the Operating

---

[6] To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts to "state a claim for relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The complaint need not contain "detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  Further, the complaint must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997).

Agreement defines as Book Value, which is in turn defined as the value of the member's capital account.  OA §§ 11.5(b), 1.1(b).

The removal of a Class B Member for cause pursuant to Section 11.6(b), however, is expressly excluded from Section 11.6(e) and is therefore not treated as a withdrawal pursuant to Article 11.  See OA § 11.6(e).  A Class B Member removed for cause is thus not entitled to receive the "values of Membership or Economic Interests."  Rather, the Operating Agreement does not provide for any compensation to a Class B Member removed for cause, like Saeed.[7]

Saeed is thus correct when he alleges that "The Operating Agreement is silent as to the treatment of an involuntary removal of the Class B Member," Compl. ¶ 28, but there is no basis in the Operating Agreement for Saeed's assertion that this silence somehow entitles him to receive more than the Book Value that every other class of member is entitled to receive upon withdrawal or removal.  To the contrary, the Operating Agreement unambiguously demonstrates that the parties agreed that a Class B Member removed for cause is not entitled to any compensation.  Any of the Complaint's allegations to the contrary cannot be accepted as true in the face of the express terms of the Operating Agreement.  See Riccio v. Ford Motor Credit Co., 238 F.R.D. 44, 47 (D. Mass. 2006) (declining to accept allegation concerning terms of leases that "is contradicted by the leases themselves").

**B.    The WB Defendants Are Not Individually Liable for
OMEX LLC's Alleged Contractual Obligations to Saeed**

The Complaint alleges that in the Operating Agreement, OMEX LLC itself agreed to pay Saeed the amounts he now claims he is owed.  See Compl. ¶ 38 ("Omex agreed to pay out Share of Net Profits and Losses and Gains on Sale to the Members.").

---

[7] This is consistent with Exhibit A to the Operating Agreement, which sets forth that Saeed contributed no capital to the company.  See OA at 58.

Saeed does not allege any corresponding promise by any of the WB Defendants individually.[8]  Instead, he alleges that "Omex by and through its Managers WallachBeth Software, Wallach and Beth, has refused to pay out any amounts owed to Saeed as a Class B Member following the sale of Omex to Raptor."  Compl. ¶ 40.  Saeed thus appears to claim that the managers of OMEX LLC are personally liable to Saeed for the company's breach of contract.[9]  There is no basis for this claim under Delaware law.

The Delaware Limited Liability Company Act, in accordance with the principles of limited liability underlying the existence of limited liability companies, sets fort the general rule that managers and members of limited liability companies are not liable for the company's debts:

> "[T]he debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company."

Del. Code Ann. tit. 6, § 18-303.

Moreover, the Operating Agreement provides that the managers of OMEX LLC "shall not be liable to the Company or to any Member for any loss or damage sustained by the Company or any Member, unless the loss or damage shall have been the result of fraud, deceit, gross negligence, willful misconduct, or a wrongful taking by the Managers."  OA § 5.5.[10]

---

[8] The breach of contract claim is not asserted against WBC.

[9] Saeed does not appear to claim that WBS is liable as a member of OMEX LLC for the company's breach of contract.

[10] Under the Delaware Limited Liability Company Act, "[a] limited liability company agreement may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties) of a member, manager or other person to a limited liability company or to another member or manager or to another person that is a party to or is otherwise bound by a limited liability company agreement; provided, that a limited liability company agreement may not limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing."  Del. Code Ann. tit. 6, § 18-1101.

Here, Saeed has not alleged the type of misconduct that could even potentially render the managers of OMEX LLC liable to him personally for a breach of the company's contractual obligations.

The decision in Kagan v. HMC-New York, Inc., 939 N.Y.S.2d 384 (N.Y. App. Div. 2012) (applying Delaware law) is directly on point.  In Kagan, the plaintiff claimed that the managers of a Delaware limited liability company failed to pay him the amounts he was owed upon his termination as a member of the company.  Id. at 386.  The operating agreements at issue in Kagan, like the Operating Agreement here, provided that the managers could only be held personally liable for certain narrow categories of misconduct.  Applying Delaware law, the court found that a breach of contract claim did not constitute "intentional misconduct" that would subject the managers to personal liability for breach of contract:

> As much as we are obligated to accept all allegations as true on a . . . motion to dismiss, in this case the plaintiff simply does not make any allegations at all that fall within the exclusions of the liability limitation provision.  As the defendants correctly assert, under Delaware law, a breach of contract claim is not an allegation of intentional misconduct, knowing violation of law, gross negligence or self-dealing.

Id. at  387; cf. Nolu Plastics, Inc. v. Ledingham, No. 20445-NC, 2005 WL 5654418, at *2 (Del. Ch. Dec. 17, 2005) (breach of contract actions did not involve "allegation of fraud or other misconduct" that would justify piercing corporate veil).

### C.  Saeed's Breach of Contract Claim is Time-Barred

The statute of limitation for a breach of contract claim under Delaware law is three years. Del. Code Ann. tit. 10 § 8106; Whittington v. Dragon Group, L.L.C., 991 A.2d 1, 10 (Del. 2009).

Saeed alleges that he was wrongfully removed as a member of OMEX LLC in early 2011.  Compl. ¶¶ 22-30, yet did not commence this action until August 2016, over five years later.  Accordingly, this action is time-barred.

The fact that Saeed alleges that he incurred damages in 2015, several years after his allegedly improper removal, does not salvage his claim because under Delaware law a breach of contract claim accrues at the time of the breach, not at the time the plaintiff alleges to have experienced the harm from the breach.  See Commonwealth Land Title Ins. Co. v. Funk, No. CV N14C-04-199 PRW, 2014 WL 8623183, at *7 (Del. Super. Ct. Dec. 22, 2014) ("Under Delaware law, a cause of action for breach of contract accrues at the time of the breach, not when the actual harm occurs."); see also Pulieri v. Boardwalk Properties, LLC, No. CV 9886-CB, 2015 WL 691449, at *11 (Del. Ch. Feb. 18, 2015) ("The three-year statute of limitations for contract claims starts to run when the claim accrues, and a breach of contract claim accrues at the time of breach, even if the plaintiff is ignorant of the cause of action.") (footnotes and internal quotation marks omitted).

Saeed's allegation that "[u]pon information and belief, the Operating Agreement was signed by the individual members of the Board under seal, " which pleads no facts, also cannot salvage his time-barred claim.  While a contract under seal is subject to a twenty-year statute of limitations, Whittington, 991 A.2d at 10, there must be some indication in the document itself indicating that it was signed under seal.  See id. (presence of the word "seal" next to an individual's signature renders document a sealed instrument).  Here, the Operating Agreement contains absolutely no reference to or indication of being a sealed instrument.  See Wallach Decl. Ex. A.  Accordingly, the three-year statute of limitations applies, and the breach of contract claim is time-barred.

III.    **THE COMPLAINT DOES NOT STATE A
CLAIM FOR BREACH OF FIDUCIARY DUTY**

Because OMEX LLC was a Delaware limited liability company, Delaware law applies to Saeed's claim for breach of fiduciary duty.  See Freid v. Gordon, No. CIV.A. 09-10928-DJC,

15

2011 WL 1157891, at *3 (D. Mass. Mar. 25, 2011) ("Since [plaintiffs'] claim is based on the [defendants'] alleged breaches of fiduciary duty as managers of . . . a limited liability company incorporated in Delaware, Delaware law governs here.").

<strong>A.    The Breach of Fiduciary Duty Claim Should Be<br>Dismissed as Duplicative of the Breach of Contract Claim</strong>

Under Delaware law, "[b]ecause of the primacy of contract law over fiduciary law, if the duty sought to be enforced arises from the parties' contractual relationship, a contractual claim will preclude a fiduciary claim." Solow v. Aspect Res., LLC, No. CIV.A. 20397, 2004 WL 2694916, at *4 (Del. Ch. Oct. 19, 2004).

Here, Saeed's breach of fiduciary duty claim is essentially an exact duplicate of his breach of contract claim. It is asserted against the same parties, arises from the same alleged conduct, seeks the same relief, and is based entirely on what Saeed claims he is owed pursuant to the Operating Agreement.[11]

It is well-established under Delaware law that under circumstances such as these, a breach of fiduciary duty claim should be dismissed as duplicative of the breach of contract claim. See Boulden v. Albiorix, Inc., No. CIV.A. 7051-VCN, 2013 WL 396254, at *16 (Del. Ch. Jan. 31, 2013), as revised (Feb. 7, 2013) (breach of fiduciary duty claim dismissed as "merely a restatement of" contract claim when claims "arise from the same alleged facts and conduct and seek the same relief"); Solow, 2004 WL 2694916, at *4 ("Because the four fiduciary duty counts in the complaint arise not from general fiduciary principles, but from specific contractual obligations agreed upon by the parties, the fiduciary duty claims are precluded by the contractual claims."); Gale v. Bershad, No. CIV. A. 15714, 1998 WL 118022, at *5 (Del. Ch. Mar. 4, 1998)

---

[11] The breach of fiduciary duty claim is not asserted against WBC.

("[B]ecause the contract claim addresses the alleged wrongdoing by the Board, any fiduciary duty claim arising out of the same conduct is superfluous.").

### B.  The Breach of Fiduciary Duty Claim Is Time-Barred

The statute of limitations for breach of fiduciary duty in Delaware is three years.  Del. Code Ann. tit. 10 § 8106.

Like the breach of contract claim, the breach of fiduciary duty claim is premised upon Saeed's allegedly wrongful removal as a member of OMEX LLC in early 2011, which is when the cause of action accrued.  See Graulich v. Dell Inc., No. CIVA5846-CC, 2011 WL 1843813, at *6 (Del. Ch. May 16, 2011) ("A claim for breach of fiduciary duty accrues at the time of the wrongful act, and the statute of limitations begins to run at the time that the cause of action accrues.  This is true even if the plaintiff is unaware of the cause of action or the harm.") (footnotes, brackets, and internal quotation marks omitted).

Accordingly, because this action was filed over five years after Saeed's removal as the Class B Member, the breach of fiduciary duty claim is time-barred.

## VI.  THE COMPLAINT DOES NOT STATE A CLAIM FOR UNJUST ENRICHMENT

### A.  The Unjust Enrichment Claims Is Duplicative of the Breach of Contract Claim, Even for Parties that Did Not Sign the Operating Agreement

Like his fiduciary duty claim, Saeed's unjust enrichment claim is also asserted against the same parties, arises from the same alleged conduct, and seeks the same relief as the breach of contract claim, and is based entirely on what Saeed claims he is owed pursuant to the Operating Agreement.  The only difference is that the unjust enrichment claim, unlike Saeed's other two claims, is also asserted against WBC as the purported "alter ego" of WBS.  Compl. ¶ 33.

"A claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim."  Doberstein v. G-P

Indus., Inc., No. CV 9995-VCP, 2015 WL 6606484, at *6 (Del. Ch. Oct. 30, 2015).  Here, Saeed affirmatively alleges that the Operating Agreement governs' the parties' relationship, and his claims for the amounts he alleges he is owed arise from the Operating Agreement.  The unjust enrichment claim should thus be dismissed as duplicative.  See id. (when the plaintiff "has not identified any factual basis for her unjust enrichment claim independent of the allegations relating to her breach of contract claim," and "the unjust enrichment claim relies on the same damages as the breach of contract claim," the unjust enrichment claim, must be dismissed "because the Agreement provides the measure of [plaintiff's] rights").

The fact that WBC is not a signatory to the Operating Agreement does not change this result because "the contractual remedies remain the sole remedies even if the claim of unjust enrichment is alleged against a party who is not a party to the contract."  AM Gen. Holdings LLC on behalf of Ilshar Capital LLC v. Renco Grp., Inc., No. CV 7639-VCN, 2013 WL 5863010, at *15 (Del. Ch. Oct. 31, 2013).  This is "because a claim for unjust enrichment cannot be used to circumvent basic contract principles recognizing that a person not a party to a contract cannot be held liable to it."  Veloric v. J.G. Wentworth, Inc., No. CIV.A. 9051-CB, 2014 WL 4639217, at *20 (Del. Ch. Sept. 18, 2014) (brackets and internal quotation marks omitted) (dismissing unjust enrichment claim against two defendants who were not parties to the agreement at issue).

### B. The Unjust Enrichment Allegations Against WBC Are Too Conclusory to Survive a Motion to Dismiss

Saeed's unjust enrichment claim, like his other claims, is based on the alleged failure to pay him a portion of the consideration for the sale of OMEX Inc., which he asserts he is owed pursuant to the Operating Agreement.  Compl. ¶¶ 44, 45.  The only basis he pleads for asserting

this claim against WBC is a single paragraph containing the wholly conclusory allegations that

WBC "received a portion" of the consideration and that WBC is the alter-ego of WBS:

> Upon information and belief, WallachBeth Capital received a portion of the
> consideration for this sale and is the alter ego of WallachBeth Software, as the
> companies have common ownership and control and all communications from the
> managers came from email addresses associated with WallachBeth Capital.

Id. ¶ 33.[12]

The conclusory allegation that WBC somehow "received a portion of the consideration

for the sale" of OMEX Inc. is insufficient to state an unjust enrichment claim because it pleads

no facts concerning the alleged enrichment, and therefore does not "state a claim for relief that is

plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp.

v. Twombly, 550 U.S. 544, 570 (2007)).[13]

Moreover, Saeed's conclusory allegation is insufficient to plead that WBC is somehow

liable for unjust enrichment (or anything else) as an alter-ego of WBS.  See InterGen N.V. v.

Grina, 344 F.3d 134, 149 (1st Cir. 2003) ("Common ownership and common management,

without more, are insufficient to override corporate separateness and pave the way for alter ego

liability."); Omni-Wave Elecs. Corp. v. Marshall Indus., 127 F.R.D. 644, 647 (D. Mass. 1989)

("Omni–Wave cannot rely on the stark legal conclusion that 'HEI is an agent or alter ego of

---

[12] Saeed also alleges that Wallach and Beth operated OMEX LLC "through" WBC, Compl. ¶ 15, but he pleads no
facts to support that allegation.  WBC is not mentioned in the Operating Agreement.  See Wallach Decl. Ex. A.

[13] Courts regularly dismiss unjust enrichment claims based on impermissibly conclusory allegations.  See Mulder v.
Kohl's Dep't Stores, Inc., No. 15-11377-FDS, 2016 WL 393215, at *8 (D. Mass. Feb. 1, 2016) (allegation that
defendant "has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained
absent its false, misleading and deceptive conduct" is too conclusory to state a claim for unjust enrichment); Shaulis
v. Nordstrom Inc., 120 F. Supp. 3d 40, 55-56 (D. Mass. 2015) (same); In re Nortel Networks Inc., No. 09-
10138(KG), 2013 WL 6500224, at *7 (Bankr. D. Del. Dec. 10, 2013) (conclusory allegation that defendant "has
been unjustly enriched through the possession, use, transfer, sale, licenses reproduction, import and distribution of
[plaintiff's] SNMP Products" did not allege sufficient facts to defeat motion to dismiss); MetCap Sec. LLC v. Pearl
Senior Care, Inc., No. CIV.A. 2129-VCN, 2007 WL 1498989, at *6 n.50 (Del. Ch. May 16, 2007) (dismissing
unjust enrichment claim when "[n]o non-conclusory facts are alleged to suggest in any fashion how [defendants]
benefited from [plaintiff's] services").

Hyundai America, and Hyundai America is an agent or alter ego of HEI.'"); <u>MicroStrategy Inc. v. Acacia Research Corp.</u>, No. CIV.A. 5735-VCP, 2010 WL 5550455, at *11 (Del. Ch. Dec. 30, 2010) ("[A] plaintiff must do more than plead that one corporation is the alter ego of another in conclusory fashion in order for the Court to disregard their separate legal existence."); <u>Nolu Plastics</u>, 2005 WL 5654418, at *2 (holding that "the doctrines of 'piercing the corporate veil' and 'alter ego' . . . do not apply because there is no allegation of fraud or other misconduct that would justify application of either doctrine"); <u>see generally</u> <u>Twombly</u>, 550 U.S. at 555 (to survive a motion to dismiss, a complaint must set forth "more than labels and conclusions").

Accordingly, Saeed has failed to state an unjust enrichment claim against WBC.[14]

## **CONCLUSION**

For the foregoing reasons Complaint should be dismissed with prejudice as to defendants WallachBeth Software LLC, Michael Wallach, David Beth, and WallachBeth Capital, LLC.

Dated: October 28, 2016                              Respectfully submitted,

                                                     WallachBeth Software LLC, Michael Wallach,
                                                     David Beth, and WallachBeth Capital, LLC,

                                                     By their attorneys,

                                                     */s/ Timothy J. Fazio*
Robert A. O'Hare Jr. (*pro hac vice* pending)        Timothy J. Fazio (BBO# 654157)
Andrew C. Levitt (*pro hac vice* pending)            Jacob J. Struck (BBO# 634518)
O'HARE PARNAGIAN LLP                                 MANION GAYNOR & MANNING LLP
82 Wall Street, Suite 300                            125 High Street
New York, NY 10005-3686                              Boston, MA 02110
(212) 425-1401                                       (617) 670-8800
rohare@ohareparnagian.com                            tfazio@mgmlaw.com
alevitt@ohareparnagian.com                           jstruck@mgmlaw.com

---

[14] The statute of limitations for unjust enrichment in Delaware is three years.  10 Del. C. § 8106; <u>see</u> <u>Shandler v. DLJ Merch. Banking, Inc.</u>, No. CIV.A. 4797-VCS, 2010 WL 2929654, at *9 n.88 (Del. Ch. July 26, 2010).  Accordingly, the unjust enrichment claim is also time-barred for the reasons set forth above.

## <u>**Certificate of Service**</u>

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 28th day of October, 2016.

/s/ *Timothy J. Fazio*
Timothy J. Fazio, BBO #654157