UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MUHAMMED SAEED, | * |
| Plaintiff, | * |
| v. | * |
| OMEX SYSTEMS, INC., f/k/a OMEX SYSTEMS, LLC; WALLACHBETH SOFTWARE, LLC; MICHAEL WALLACH; DAVID BETH; and WALLACHBETH CAPITAL, LLC, | * Civil Action No. 16-cv-11715-ADB |
| Defendants. | * |

**MEMORANDUM AND ORDER ON MOTION TO DISMISS AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**

BURROUGHS, D.J.

On August 24, 2016, Plaintiff Muhammed Saeed initiated this suit against Defendants Omex Systems, Inc. ("Omex"), WallachBeth Software, LLC ("WBS"), Michael Wallach, David Beth, and WallachBeth Capital, LLC ("WBC") asserting breach of contract, breach of fiduciary duty, and unjust enrichment claims under Delaware law. Presently pending before the Court is a motion to dismiss brought by WBS, Wallach, Beth, and WBC[1] [ECF No. 10], on the grounds that this Court lacks personal jurisdiction over any of the moving Defendants and, alternatively, on the grounds that Saeed has failed to state a claim upon which relief can be granted. Also pending before the Court is Saeed's Motion for Entry of Default of Omex [ECF No.18]. For the reasoning set forth below, the Court grants the motion to dismiss and denies without prejudice the motion for entry of default.

---

[1] Omex did not bring or join the motion to dismiss for lack of personal jurisdiction; as such, there is no briefing on this Court's personal jurisdiction over Omex.

## I. BACKGROUND

### a. Factual Background

The following are the facts as alleged in the Complaint [ECF No. 1] unless otherwise noted. In 2008, Saeed and WBS jointly founded Omex Systems, LLC, now known as Omex Systems, Inc., a company which provides a computer-based financial investment platform. Compl. ¶¶ 1, 13. During the relevant time period, Omex was a Delaware corporation with a primary place of business in the state of New York. Id. ¶ 8. WBS is a New York limited liability company with a primary place of business in New York. Id. ¶ 9. Wallach and Beth are both individual residents of either New York or New Jersey. Id. ¶¶ 9–10; Wallach Decl. [ECF No. 11–2] ¶ 27; Beth Decl. [ECF No. 11–1] ¶ 4. Wallach and Beth also own WBC, a broker-dealer through which Wallach and Beth operated Omex, which is also a New York limited liability company with a primary place of business in the state of New York. Compl. ¶¶ 9, 15. Saeed, Wallach, and Beth, through WBS, co-managed Omex. Id. ¶¶ 14–15.

The operation of Omex was governed by an Operating Agreement ("the Agreement") [ECF No. 11–3] signed by Wallach, Beth, and Saeed. Compl. at ¶¶ 16–17. The Agreement outlined the classes of each of the limited liability company members and the rights corresponding to each class of membership. Id. at ¶¶ 19–21. WBS is listed as a "Class A" member and Saeed is listed as a "Class B" member. Id. at 20; see also Agreement at 59–60. As a Class B member, pursuant to the Agreement, Saeed was entitled to a 20% share of net profits and net losses and a 20% gain on sale allocation. Compl. ¶ 21; Agreement at 58.

On February 18, 2011, Wallach and Beth, as managers and on behalf of all other Class A members, sent a letter to Saeed informing him that he had been removed as a manager, reducing his share of net profits and losses to 0% and his gain on sale allocation to 10%. Compl. at ¶ 22.

2

The letter cited provisions of the Agreement which outlined the process for involuntary withdrawal of a member. Id. at ¶¶ 24–26. On April 6, 2011, Saeed received another letter notifying him that he had been terminated as a member of Omex entirely, and that his gain on sale allocation had been further reduced to 0%. Id. at ¶ 29. In 2015, Omex was purchased by Raptor Trading Systems, Inc. for total consideration exceeding two million dollars. Id. at ¶¶ 31, 35. Saeed alleges that he never received the $500,000.00 he is entitled to from the sale of Omex, as stipulated in the Agreement. Id. at ¶¶ 34–35; [ECF No. 11-3].

      **b.    Procedural Background**

Saeed filed the Complaint on August, 24, 2016 against Omex, WBS, WBC, and Wallach and Beth individually. On October 28, 2016, Defendants WBS, WBC, Wallach, and Beth filed the instant Motion to Dismiss [ECF No. 10] on the grounds of lack of personal jurisdiction over any of the moving Defendants, and failure to state a claim upon which relief can be granted. See also [ECF No. 11].

On December 21, 2016, Saeed moved for an entry of default of Omex [ECF No. 18] for Omex's failure to file a timely response to Saeed's complaint. To date, Omex has not responded to the complaint or entered an appearance in this matter.

## II.    MOTION TO DISMISS

To evaluate a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most hospitable to the plaintiff's theory, and draw all reasonable inferences from those facts in favor of the plaintiff. U.S. ex rel. Hutcheson v. Blackstone Med. Inc., 647 F.3d 377, 383 (1st Cir. 2011). The Court may consider the "complaint, documents annexed to it, and other materials fairly incorporated within it," which "sometimes includes documents referred to

in the complaint but not annexed to it" and "matters that are susceptible to judicial notice." Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004). Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action" is not enough, id. at 545; the complaint must state "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations and citation omitted).

When a motion to dismiss asserts grounds for dismissal based both on the merits and on jurisdictional deficiency, the jurisdictional issues must be resolved prior to an analysis of the merits. See Bell v. Hood, 327 U.S. 678, 682 (1945) ("Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy.").

Defendants argue that this Court lacks personal jurisdiction over them. There are two types of personal jurisdiction: general and specific. See, e.g., Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995). General jurisdiction exists "when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." Id. (quoting United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992)). To establish specific jurisdiction, the plaintiff must show that "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994) (quoting United Elec. Workers, 960 F.2d at 1088–89).

The plaintiff bears the burden of proving the existence of personal jurisdiction. See, e.g., Foster-Miller, 46 F.3d at 145. Here, the Court will employ the "prima facie" standard, which is the most common method used to evaluate personal jurisdiction. Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007). It requires the Court to consider whether the plaintiff has "proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992). The plaintiff "cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts." Foster-Miller, 46 F.3d at 145. The court may "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002).

### A. General Jurisdiction

Saeed does not argue that this Court has general jurisdiction over individual Defendants Wallach or Beth, or over WBS. [ECF No. 17 at 4–5]. Saeed only asserts that the Court has general jurisdiction over WBC.

Saeed first argues that the Court has general jurisdiction over WBC because it has been registered with the Massachusetts Securities Division since 2009, but he has not cited relevant case law to support the proposition that registration with the Division is sufficient to establish general jurisdiction, and his argument and citations conflate the requirements of general and specific jurisdiction. See [ECF No. 17 at 4–5]. Plunkett v. Valhalla Investment Services, Inc., 409 F. Supp. 2d 39, 42 (D. Mass. 2006), which the Court believes is one of the cases Saeed intended to cite,[2] held that a Massachusetts District Court had *specific* jurisdiction over an out-

---

[2] In his opposition brief, Saeed cites "Bulldog Investors Gen. P'ship, 409 F. Supp. 2d 39, 6 (D. Mass. 2006)." See ECF No. 17 at 5. However, the case located at 409 F. Supp. 2d 39 is Plunkett, and the parenthetical description Saeed provides for the citation appears to match the facts of Plunkett.

5

of-state defendant investment company alleged to have violated the Massachusetts Uniform Securities Act, Mass. Gen. Laws ch. 110A, because the investment company "had minimum contacts with Massachusetts." The facts relevant to the jurisdictional analysis are not fully fleshed out in Plunkett because the court denied the motion to dismiss on alternative grounds, but there is no indication of an allegation that the defendant was registered with the Massachusetts Securities Division, and the case never addresses general personal jurisdiction. 409 F. Supp. 2d at 42–43. Saeed also apparently intended to cite Bulldog Investors Gen. P'ship v. Sec'y of the Commonwealth, 929 N.E.2d 293, 300–01 (Mass. 2010), in which the Massachusetts Supreme Judicial Court held that it had personal jurisdiction over an out-of-state defendant company that directed an offer of unregistered securities to a Massachusetts resident. This case, too, only addresses specific jurisdiction, and does not speak to general jurisdiction. Bulldog Investors, 929 N.E.2d at 300–01. Moreover, Saeed's reliance on this case to support the proposition that registration with the Massachusetts Securities Division is sufficient to confer general jurisdiction is inapposite because the case is fundamentally premised on allegations that the defendant company *hadn't* registered its securities in violation of the Massachusetts Uniform Securities Act. Id. As such, the cases upon which Saeed primarily relies to assert this Court's general jurisdiction over WBC do not support his position.

Next, Saeed contends that WBC "admits to providing services to multiple institutional brokerage clients in the Commonwealth of Massachusetts over the past five plus years" [ECF No. 17 at 5], but he has not provided factual evidence to support this allegation. Defendants submit, without contradiction, that they conduct less than 3% of their business in Massachusetts. [ECF No. 21 at 4]. Moreover, even "continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that

6

activity;" general jurisdiction may only be asserted in jurisdictions "in which the corporation is fairly regarded as at home." Daimler AG v. Bauman, 134 S. Ct. 746, 757, 760 (2014) (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011)); see also International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement, 326 U.S. 310, 318 (1945). For corporate defendants, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction," Daimler, 134 S. Ct. at 757, 760, and Plaintiff does not allege that WBC is either incorporated or has a principal place of business in Massachusetts. While there may be an "exceptional case" in which a corporation is "essentially at home" in a location other than the place of incorporation or principal place of business, Daimler, 134 S. Ct. at 761 n.19, Saeed has not demonstrated that such an exception is warranted here. See id. at 752, 761–62 (holding that 2.4% of global sales and 10% of U.S. sales occurring in forum state were not sufficient to support general jurisdiction over corporate defendant); see also Campbell Pet Co. v. Miale, 542 F.3d 879, 884 (1st Cir. 2008) (finding that two percent of defendant's total sales occurring in forum state falls "far short" of the amount sufficient to exercise general jurisdiction over the defendant). Therefore, Saeed has not met his burden to prove that the Court has general jurisdiction over WBC.

### B. Specific Jurisdiction

Next, Saeed asserts that the Court has specific personal jurisdiction over WBS, WBC,[3] Wallach, and Beth. Specific jurisdiction hinges on two requirements: that the forum state's long-

---

[3] It is unclear from Saeed's opposition whether or not he is asserting that the Court has specific jurisdiction over WBC. The header for his argument reads "The Court has Specific Jurisdiction over WBS, Michael Wallach, and David Beth," omitting WBC, but he goes on to refer to the "WB Defendants" throughout his argument, which includes WBC. See [ECF No. 17 at 1–2]. For the purposes of this order, the Court assumes that Saeed intended to include WBC in his analysis of this Court's specific personal jurisdiction over each of the "WB Defendants."

arm statute grants jurisdiction over the defendant, and that jurisdiction comports with the strictures of the Constitution. Pritzker, 42 F.3d at 60.

> In Massachusetts, the court "may sidestep the statutory inquiry and proceed directly to the constitutional analysis . . . because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.

Evans Cabinet Corp. v. Kitchen Int'l, Inc., 593 F.3d 135, 146 (1st Cir. 2010). Thus, the Court may proceed directly to a constitutional jurisdictional analysis.

To analyze whether it may exercise specific jurisdiction, the Court applies a three-part framework:

> [f]irst, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Prtizker, 42 F.3d at 60–61 (quoting United Elec. Workers, 960 F.2d at 1089). These are known as the "relatedness," "purposeful availment," and "reasonableness" prongs. Id.

### 1. WBC

Throughout his brief, Saeed refers to WBS, WBC, Wallach, and Beth as a group ("the WB Defendants") and frames his allegations in terms of the entire group, instead of stating particular facts concerning each Defendant. The Court is able to infer which facts are relevant to evaluating specific jurisdiction over WBS, Wallach, and Beth, see *infra*, but Saeed has not alleged any facts indicating the Court has specific jurisdiction over WBC. His specific jurisdiction argument relies heavily on the February 18, 2011 letter, which was signed by Wallach and Beth on behalf of WBS, but there is no allegation that WBC participated in writing

8

or sending this letter. Furthermore, Saeed has not stated facts indicating any kind of relationship between WBC and WBS, Wallach, and Beth that would be relevant to specific jurisdiction. Nor has Saeed asserted any other facts that pertain to the Court's specific jurisdiction over WBC. Thus, the Court must conclude it cannot exercise specific jurisdiction over WBC.[4]

### 2. WBS, Wallach, and Beth

The facts relevant to evaluating specific jurisdiction over WBS, Wallach, and Beth are closely related, so the Court will discuss the remaining Defendants together.

#### a. Relatedness

To demonstrate relatedness, Saeed must show "a demonstrable nexus between his claims and [the Defendant's] forum-based activities, such that . . . the litigation itself is founded directly on those activities." Adelson, 652 F.3d at 81 (internal citations and quotations omitted). Saeed's claim is fundamentally a contract dispute. As such, the Court must "look to whether the defendant's activity in the forum state was instrumental in either the formation of the contract or its breach" and to "whether the defendant was subject to substantial control and ongoing connection to [Massachusetts] in the performance of the contract." Id. (internal citations and

---

[4] To the extent that Saeed attempts to impute the minimum contacts of WBC and WBS to their officers, Wallach and Beth, that argument is unavailing. Pursuant to the fiduciary shield doctrine, the court is generally precluded from exercising personal jurisdiction over a non-resident corporate agent for acts performed on behalf of his employer, unless the individual defendant has "an identity of interest with the corporation itself (i.e. the corporation and the corporation's president)." LaVellee v. Parrot-Ice Drink Products of Am., Inc., 193 F. Supp. 2d 296, 300–01 (D. Mass. 2002). Saeed alleges that Wallach and Beth owned WBC [ECF No. 1 at ¶ 15], but does not allege that Wallach and Beth owned WBS, and makes no allegation that each has "an identity of interest" with either corporate Defendant. LaVellee, 193 F. Supp. 2d at 301. As such, he has not met his burden of showing that the Court has jurisdiction over the individual Defendants Wallach and Beth, absent some independent basis for exercising jurisdiction which he also has not alleged. See LaVellee, 193 F. Supp. 2d at 300–01. Notwithstanding this pleading insufficiency, for the reasoning set forth below, the Court does not have jurisdiction over the corporate Defendants, and any attempt to impute liability from them is therefore mooted.

9

quotations omitted). Saeed does not allege in either the complaint or his opposition to Defendants' motion that the contract was drafted, signed, or performed Massachusetts. Instead, he argues that the sending of the February 18, 2011 letter constituted a breach of the contract, and thus the letter's contact with Massachusetts is sufficiently related to the claim underlying litigation. This position is not tenable.

In Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d 284 (1st Cir. 1999), the First Circuit upheld a dismissal for lack of personal jurisdiction where a New Hampshire private school brought a contract claim in New Hampshire federal district court against a fund based in Florida for failure to appropriately apportion funding. The First Circuit reasoned that even though the school received the payments in New Hampshire and first received notice of the insufficient fund amount in New Hampshire after realizing the payments had theretofore been miscalculated, "the relevant contract had been created in Florida" and "if the contract was breached, the breach also occurred in Florida (where the Fund decided what amounts would be disbursed to Exeter)." Phillips Exeter, 196 F.3d at 289.

Furthermore, the First Circuit determined in another case that a letter giving notice that payment under a contract may not occur is "not a *related* contact . . . because the letter was not essential to either the formation or breach of the alleged contract." U.S. v. Swiss American Bank, Ltd., 274 F.3d 610, 622 (1st Cir. 2001); see also Callahan v. Harvest Bd. Int'l, Inc., 138 F. Supp. 2d 147, 164 (D. Mass. 2001) ("As an initial matter, the plaintiff's harm did not arise out of the letter [informing refusal to pay promissory notes] sent to Massachusetts. Rather, the harm, if any, arose out of [the defendants'] decision not to pay . . . . Thus, the defendants' forum-related activity in sending the letter into Massachusetts does not satisfy the relatedness requirement of jurisdiction." (internal quotations and citation omitted)). Courts thus generally appear to view a

breach of contract as an action or a decision; as such, the alleged breach in the case at bar occurred in New York, where the decision to remove Saeed as a manager took place, not in Massachusetts, where Saeed received notice of his removal. Because the single February 18, 2011 letter is the only basis upon which Saeed rests his relatedness argument, he has not carried his burden and the Court finds that neither WBS, Wallach, nor Beth have had a sufficiently related contact with Massachusetts so as to confer specific personal jurisdiction.[5]

b. Purposeful Availment

Even assuming, *arguendo*, that Saeed could meet his burden of proving relatedness, he has also failed to show purposeful availment. A defendant has purposefully availed itself of a forum state when it invokes "the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." United Elec. Workers, 960 F.2d at 1089. "The cornerstones of this inquiry are voluntariness and foreseeability" and purposeful availment may not be "based on 'random, fortuitous, or attenuated contacts.'" C.W. Downer & Co. v. Bioriginal Food & Science Corp., 771 F.3d 59, 66 (1st Cir. 2014) (quoting Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011)) (further citations omitted). "Foreseeability requires that the contacts also be of a nature that the defendant could 'reasonably anticipate being haled into court [in the forum state].'" Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008) (quoting Adelson, 510 F.3d at 50).

---

[5] All three prongs must be satisfied in order for a court to exercise specific jurisdiction; once the court determines that one of the prongs has not been met, it need not address the others. See Katz v. Spiniello Cos., No. Civ. A. 16-11380, 2017 WL 1088082, at *4 (D. Mass. Mar. 22, 2017) (emphasis added) ("The Court does not need to reach the purposeful availment prong given its findings as to the relatedness prong . . . ."); Phillips Exeter, 196 F.3d at 289 (withholding analysis of reasonableness prong after finding that purposeful availment prong had not been satisfied (internal quotation marks omitted)). Nevertheless, for the sake of clarity and thoroughness, the Court will address the remaining factors.

11

In regard to contract disputes, "an individual's contract with an out-of-state party *alone*" is not enough to "establish sufficient minimum contacts in the other party's home forum." Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985). Instead, the court "evaluate[s] the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' to determine whether the defendants purposefully established minimum contacts." Daynard, 290 F.3d at 52 (quoting Burger King, 471 U.S. at 479).

Here, Saeed has not sufficiently explained how the facts he asserts are sufficient to demonstrate purposeful availment. Saeed claims that WBS's "sole function . . . was to serve as the Class A Member of Omex," that Omex maintained an office in Massachusetts, see [ECF No. 17 at 3], and that this is sufficient to establish that WBS, Wallach, and Beth purposefully availed themselves of the benefits and privileges of Massachusetts, but he has not illustrated how Omex's presence in Massachusetts translates into personal jurisdiction over WBS, much less Wallach and Beth. Corporations are presumed to be distinct absent a specific factual showing that the corporate veil should be discarded. See United Elec. Workers, 960 F.2d at 1091 (holding that ordinarily a parent company is deemed independent from its subsidiaries for the purposes of personal jurisdiction analysis, unless "*the record contains facts* that warrant disregarding [the defendant's] corporate independence," such as facts establishing "clear evidence that the parent in fact controls the activities of the subsidiary" (emphasis added) (citations omitted)).

To the extent that Saeed argues that WBS, Wallach, and Beth purposefully availed themselves of Massachusetts law through mere awareness of Saeed's work in a Massachusetts office for Omex, that argument is likewise unpersuasive. A "defendant's awareness of the location of the plaintiff is not, on its own, enough to create personal jurisdiction over a

defendant . . . Jurisdiction cannot be created by, and does not travel with the plaintiff . . . wherever [he] goes." Prairie Eye Ctr., 530 F.3d at 28; see also Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 5–6 (1st Cir. 2016) (holding that contractual requirement that legal notice be given to a plaintiff's "registered office" in Massachusetts was not "the type of availment by [defendant] that would justify [plaintiff] haling [defendant] into Massachusetts court on a contract that otherwise created no link between [defendant] and Massachusetts"); U.S.S. Yachts, Inc. v. Ocean Yachts, Inc., 894 F.2d 9, 11–12 (1st Cir. 1990) (holding that sending three letters, including termination letter, into forum state was insufficient to establish minimum contacts with that state and that defendant could not have "reasonably anticipate[d] being haled into that forum's court"). Accordingly, the Court cannot find that Saeed has satisfied the purposeful availment prong.

c. Reasonableness

Finally, under the reasonableness prong, the Court must determine "whether the exercise of jurisdiction over [Defendants] in the circumstances of this case would, holistically viewed, offend traditional notions of 'fair play and substantial justice.'" Pritzker, 42 F.3d at 63 (quoting Burger King, 471 U.S. at 476) (further citations omitted). The Court must consider the following "gestalt factors" when analyzing the fairness of exercising specific jurisdiction over a defendant:

> (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Prizker, 42 F.3d at 63–64 (quoting United Elec. Workers, 960 F.2d at 1088). "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need

13

show in terms of unreasonableness to defeat jurisdiction." Ticketmaster N.Y., Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994).

Here, the gestalt factors seem to be, at best, neutral. First, requiring Defendants to travel from New York to Massachusetts is not overly burdensome. See Pritzker, 42 F.3d at 64 (explaining that travel from New York to Puerto Rico was not sufficiently burdensome to preclude exercise of personal jurisdiction).

The second gestalt factor appears to cut in Defendants' favor, given that Saeed has failed to allege any facts demonstrating that WBS, Wallach, or Beth have conducted a significant amount of business in Massachusetts or otherwise impacted Massachusetts citizens, and given that the contract is not governed by Massachusetts law. See Lawson v. Law Office of Shawn Whittaker, PC, No. C.A. 10-326 ML, 2010 WL 4455823, at *4 (D.R.I. 2010) (holding that forum state's interest in adjudicating was "diminished to some extent by the fact that all of the alleged conduct occurred out of state"); cf. Daynard, 290 F.3d at 62 (finding that Massachusetts had adjudicatory interest because Massachusetts law governed the disputed agreement).

The third gestalt factor weighs in Saeed's favor, as the Court "must accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience." Ticketmaster, 26 F.3d at 211.

The fourth factor weighs against exercising jurisdiction because there is no allegation that any witnesses reside in Massachusetts or that any evidence regarding the underlying contract dispute is located here. See Mueller Sys., LLC v. Robert Teti and Itet Corp., 199 F. Supp. 3d 270, 279 (D. Mass. 2016) (holding that adjudicating in forum state would not provide effective relief when necessary evidence and witnesses were located outside of the forum).

The fifth factor is not implicated, as this contract dispute does not appear to bear on any substantive social policy. See Bluetarp Financial, Inc. v. Matrix Const. Co., 709 F.3d 72, 83 (1st Cir. 2013) (finding no substantive social policy implicated by corporate breach of contract claim). Thus, on balance, because the "frailty of plaintiffs' showings on relatedness and purposeful availment is not strengthened as a result of [the Court's] consideration of reasonableness of an exercise of jurisdiction over the defendants," Sawtelle v. Farrell, 70 F.3d 1381, 1396 (1st Cir. 1995), the Court must refrain from exercising jurisdiction.[6]

### C. Conclusion

For the reasons discussed *supra*, the Court concludes that Saeed has failed to meet his burden to proffer sufficient evidence to demonstrate that the Court may exercise personal jurisdiction over WBC, WBS, Wallach, and Beth. Accordingly, Defendants' motion to dismiss due to lack of jurisdiction is granted.

## III. MOTION FOR ENTRY OF DEFAULT

Also pending before the Court is Saeed's Motion for Entry of Default of Omex [ECF No. 18]. Saeed contends that Omex's failure to answer in the two-year period that has elapsed since he filed his complaint warrants the entry of default. At this time, however, it is not clear that the Court has personal jurisdiction over Omex, so the motion is denied with leave to renew.

"The power to grant a default judgment is within the broad discretion of the trial court; however, default judgments are generally disfavored and cases should be tried on their merits whenever possible." In re Schnell, 148 B.R. 365, 366 (D. Mass. 1992) (citation omitted). "[A] default judgment that inevitably would be set aside should not be entered in the first place." Elektra Entm't Grp., Inc. v. Carter, 618 F. Supp. 2d 89, 92 (D. Me. 2009) (citing 10A Charles A.

---

[6] As the Court lacks personal jurisdiction over the moving Defendants, their argument that the case should be dismissed for failure to state a claim is moot.

Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2685, at 40–41 (3d ed.1998)). "[A] default judgment issued without jurisdiction over a defendant is void . . . [and] remains vulnerable to being vacated at any time . . . ." M&K Welding, Inc. v. Leasing Partners, LLC, 386 F.3d 361, 364 (1st Cir. 2004) (citation omitted). The Court has an affirmative duty to examine its jurisdiction over the subject matter and the parties prior to deciding whether to grant a motion for entry of default. Pilgrim Badge & Label Corp. v. Barrios, 857 F.2d 1, 3–4 (1st Cir. 1988) (citing Williams v. Life Sav. & Loan, 802 F.2d 1200 (10th Cir. 1986) ("[A] district court may not *sua sponte* dismiss for lack of personal jurisdiction, *except when a default judgment is to be entered*." (emphasis added)); Estates of Ungar and Ungar ex rel. Strachman v. Palestinian Authority, 325 F. Supp. 2d 15, 45–46 (D.R.I. 2004) (explaining that "[a] court which is asked to enter default judgment should assure itself that it has jurisdiction both over the subject matter and the parties," and collecting cases). The court must determine, by a preponderance of the evidence, that it has jurisdiction over the parties prior to reaching the default judgment issue. Estates of Ungar, 325 F. Supp. at 45 (citing Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 154 (2nd Cir. 1999)).

Here, Saeed has failed to demonstrate, by a preponderance of the evidence, that the Court has personal jurisdiction over Omex. Saeed does not make any jurisdictional arguments in his Motion for Entry of Default [ECF No. 18]. In his opposition [ECF No. 17] to Defendants' motion to dismiss, Saeed offers some conclusory allegations to the effect that Omex was "maintain[ing] an office" and "conducting business" in Massachusetts, but does not make specific arguments or cite sources supporting the proposition that such contacts are adequate to establish personal jurisdiction. Even taking Saeed's minimally asserted allegations as true and "add[ing] to the mix facts put forward by the defendants, to the extent that they are

16

uncontradicted," Daynard, 290 F.3d at 51, the evidence is insufficient to meet his burden under the prima facie standard.

First, Saeed has not demonstrated that the Court may exercise specific jurisdiction over Omex. As to the relatedness prong, Saeed has not identified a particular action taken by Omex that would be sufficiently related to Saeed's underlying contract claim to satisfy this factor.[7] Furthermore, as to purposeful availment, Saeed's conclusory allegation that Omex "maintained an office" and was "conducting business" in Massachusetts is not, without more, enough to show that Omex purposefully availed itself of the privilege of conducting business in Massachusetts. See Copia, 812 F.3d at 5–6 (holding that contractual requirement that legal notice be given to a plaintiff's "registered office" in Massachusetts was not "the type of availment by [defendant] that would justify [plaintiff] haling [defendant] into Massachusetts court on a contract that otherwise created no link between [defendant] and Massachusetts"); Prairie Eye Ctr., 530 F.3d at 28 ("[D]efendant's awareness of the location of the plaintiff is not, on its own, enough to create personal jurisdiction over a defendant . . . Jurisdiction cannot be created by, and does not travel with the plaintiff . . . wherever [he] goes."). Saeed offers no evidence or specific facts regarding how Omex was conducting business in Massachusetts, or about the office he alleges Omex maintains here. Thus, Saeed's failure to meet his burden on the first two prongs means that he cannot establish that the Court has specific jurisdiction over Omex at this time. See Phillips Exeter, 196 F.3d at 289 (withholding analysis of "reasonableness" prong of specific jurisdiction analysis after finding that "purposeful availment" prong had not been satisfied).

Saeed's claims are similarly insufficient to establish general jurisdiction over Omex. Defendants assert, with no contradiction by Saeed, that Omex had no personnel or operations in

---

[7] Saeed does not argue that Omex specifically was involved in sending the February 18, 2011 letter, which is the sole basis for his relatedness argument in his brief.

17

Massachusetts other than Saeed, who worked from his home office. See Wallach Reply Declaration ("Wallach Reply Decl.") [ECF No. 21–1] ¶ 5. Saeed acknowledged that Omex is incorporated in Delaware, Compl. ¶ 2, and he has not asserted that Omex has its principal place of business in Massachusetts. As discussed *supra*, only in an "exceptional case" can a court exercise general jurisdiction over a corporation in a jurisdiction other than its place of incorporation or principal place of business, see Daimler, 134 S. Ct. at 757, 760–61 & n.19, and there is no indication that the facts of this case warrant making such an exception here.

Accordingly, the fact that Saeed has not established that the Court has personal jurisdiction over Omex precludes the Court from granting a default against Omex at this time. It is possible, however, that Saeed may be able to demonstrate facts sufficient to prove that the Court has jurisdiction over Omex. Thus, the motion for entry of default is denied without prejudice and Saeed is granted leave to renew his motion. Alternatively, Saeed may move to transfer the case to a court that has personal jurisdiction over Omex.

## IV. CONCLUSION

For the reasons discussed in this memorandum and opinion, the Court GRANTS Defendants' Motion to Dismiss [ECF No. 10] and DENIES without prejudice Plaintiff's Motion for Entry of Default [ECF No. 18].

**SO ORDERED.**

September 22, 2017 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE